ORIGINAL

UNITED STATES COURT OF FEDERAL CLAIMS

FILED

OCT  9 2009

U.S. COURT OF
FEDERAL CLAIMS

| | |
|---|---|
| INTERNATIONAL BANK OF CHICAGO, | ) )  ) |
| Plaintiff, | ) ) |
| vs. | ) |
| | ) |
| UNITED STATES OF AMERICA | ) |
| | ) |
| Defendant. | ) ) |

CoFC Case No: 09-686 C

Complaint

## COMPLAINT

COMES NOW Plaintiff International Bank of Chicago ("the Bank"), by and through undersigned counsel, hereby files this Complaint for Breach of Guaranty against Defendant, the United States of America on the bases set forth below.

### I.    SUMMARY

Defendant entered into two contracts with Plaintiff, the Bank, by and through its agency, the Department of Transportation ("DOT") pursuant to a Short-Term Lending Program established by DOT's Office of Small and Disadvantaged Business Utilization.  DOT guaranteed payment of two loans, entered into by Plaintiff and borrower Bouie Construction Inc, and Plaintiff and borrower Consolidated Industries.  DOT signed a Guarantee, to which they irrevocably and unconditionally guaranteed to Plaintiff payment of seventy-five percent (75%) of the outstanding and unpaid principal amount of the loans, interest on the principal amount of the loans and interest on any

due and unpaid amounts by the borrowers to the Bank, with a maximum liability provision.    Both Bouie Construction Inc., and Consolidated Industries have defaulted under on their loans.    Plaintiff has made demand on DOT to make payment in accordance with the signed guaranty, however, DOT has failed to make any payment.

## II.    PARTIES

1.    Plaintiff, the International Bank of Chicago, is an Illinois Banking Corporation, with its principal place of business located at 1860 N. Mannheim Rd, Stone Park, Illinois, 60165.

2.    The agency of the United States involved in this matter is the United States Department of Transportation, with its principal place of business located at 1200 New Jersey Avenue SE, Washington, DC 20590.

## III.    JURISDICTION

1.    This Court has jurisdiction pursuant to The Tucker Act, 28 U.S.C. § 1491(a)(1) because this is a claim against the United States founded upon an express contract with DOT.

## COUNT I – BREACH OF GUARANTY
### (Bouie)

1.    In July of 2005, the Bank and DOT entered into a Guarantee Agreement (the "Agreement") attached hereto as Exhibit A.

2.    Pursuant to Exhibit A, the Bank was to provide a loan to Bouie Construction, Inc. an Illinois Corporation ("Bouie"), pursuant to a Short-Term

Lending Program established by DOT's "Office of Small and Disadvantaged Business Utilization."

3.    On July 21, 2005, Exhibit A was executed by Robert A. Klamp on behalf of the Bank and Jose Gutierrez on behalf of DOT.

4.    The terms of the Guarantee provided that DOT was to "irrevocably and unconditionally" guaranty to Plaintiff payment of seventy-five percent (75%) of the "outstanding and unpaid principal amount of the loan, interest on the principal amount of the loan and interest on any due and unpaid amounts owing by the Bouie to the Bank, provided however that the maximum liability of DOT shall not at any time exceed Three Hundred Seventy Five Thousand, plus interest ($375,000.00)." See Exhibit A, Paragraph 1.01.

5.    On or about June 29, 2004, Bouie delivered to the Bank a promissory note dated June 29, 2004 by which it promised to pay the amount of the loan of Five Hundred Thousand Dollars ($500,000.00) to the Bank and the Bank disbursed funds to Bouie.

6.    Bouie failed to repay to the Bank a remaining sum of Three Hundred Fifty Eight Thousand Six Hundred Ninety Two and forty-five cents ($358,692.45) of the loan on or before the maturity of the loan and has since refused to pay.

7.    Based on the outstanding principal balance of $358,692.45, DOT owes the Bank the 75% Guaranty in the amount of $269,019.34 for the

principal balance plus the 75% Guaranty of the interest as it continues to accrue.

8.    Upon the loan going into default, the Bank has made numerous demands on DOT for payment in accordance with Section 2.02 of the Agreement.

9.    As of the date of filing, DOT has not paid the Bank in accordance with its Guarantee.

**WHEREFORE,** Plaintiff, the Bank, respectfully requests judgment against Defendant, United States in the amount of $269,019.34 plus 75% of interest that has accrued at the time of judgment and for such other relief this Court deems just.

## COUNT II – BREACH OF GUARANTY
### (Consolidated Industries)

10.    In December of 2004, the Bank and DOT entered into a Guarantee Agreement ("Second Agreement") attached hereto as Exhibit B.

11.    Pursuant to Exhibit B, the Bank was to provide a loan to Consolidated Industries, Inc., ("Consolidated") an Illinois Corporation, pursuant to a Short Term Lending Program established by DOT's Office of Small and Disadvantaged Business Utilization.

12.    On December 29, 2004, Exhibit B was executed by Sean M. Moss on behalf of DOT.

13.    The terms of Second Agreement provided that DOT was to "irrevocably and unconditionally" guaranty to Plaintiff payment of seventy-

4

five percent (75%) of the "outstanding and unpaid principal amount of the loan, interest on the principal amount of the loan and interest on any due un unpaid amounts owing by the Borrower to the Bank, provided however that the maximum liability of DOT shall not at any time exceed Eighteen Thousand Seven Hundred Fifty plus interest ($18,750.00)." See Exhibit B, Paragraph 1.01.

14.    On or around December 29, 2004, Consolidated delivered to the Bank a promissory note under which it promised to pay the amount of the loan of Twenty Five Thousand Dollars ($25,000.00) to Bank and Bank disbursed funds to Consolidated.

15.    Consolidated failed to repay to the Bank a remaining sum of Twenty Five Thousand Dollars ($25,000.00) of the loan on or before the maturity of the loan and has since refused to pay.

16.    Consolidated owes the Bank principal in the amount of $20,396.59 plus interest.

17.    Based on the outstanding principal balance of $20,396.59 DOT owes the Bank the 75% Guaranty in the amount of $15,297.44 plus 75% of accrued interest.

18.    Upon the loan going into default, the Bank has made numerous demands on DOT for payment in accordance with Section 2.02 of the Second Agreement.

19.    As of the date of filing, DOT has not paid the Bank in

accordance with its Guarantee.

WHEREFORE, Plaintiff, the Bank, respectfully requests judgment against Defendant, the United States in the amount of $15,297.44 and for the unpaid principal plus 75% of all accrued interest at the time of judgment and such other relief this Court deems just.

## PRAYER FOR RELIEF

Plaintiff, International Bank of Chicago, respectfully requests judgment against Defendant, United States, in the amount of $284,316.78 plus 75% of accrued interest and for such other relief this Court deems just.

Respectfully Submitted

Janine S. Benton, Esq.
Kathy C. Potter, Esq.
BENTON POTTER & MURDOCK, P.C.
400 So. Maple Ave., Ste 210
Falls Church, VA 22046
(703) 992-6840 (Telephone)
(703) 832-0211 (Facsimile)
jb@bpmlawyers.com
kcp@bpmlawyers.com
jm@bpmlawyers.com

Attorneys for Plaintiff, International Bank of Chicago

Date: 10/08/09

**EXHIBIT A**

DEPARTMENT OF TRANSPORTATION
OFFICE OF SMALL AND DISADVANTAGE BUSINESS UTILIZATION
SHORT TERM LENDING PROGRAM

## GUARANTEE AGREEMENT

This GUARANTEE AGREEMENT dated as of _June 29_, 2004 (this Agreement) is made by the United States Department of Transportation (DOT) and International Bank of Chicago of Chicago, Illinois, a State Banking Corporation, its successors and permitted assigns (Bank) concerning the Bank's extension of a Five Hundred Thousand Dollars ($500,000) Loan (Loan) to Bouie Construction Inc., A Illinois Corporation, (Borrower).

## SECTION 1. GUARANTEE

1.01 <u>The Guarantee.</u> Subject to the terms and conditions set forth in this Agreement, DOT hereby guarantees, irrevocably and unconditionally (except to the extent expressly provided in Sections 1.03, 1.04, 1.05 or by applicable law) to the Bank payment of seventy five percent (75%) of the outstanding and unpaid principal amount of the loan, interest on the principal amount of the loan and interest on any due and unpaid amounts owing by the Borrower to the Bank, provided however that the maximum liability of DOT shall not at any time exceed Three Hundred and Seventy Thousand, plus interest ($375,000), the Guaranteed Amount.

1.02 <u>Coverage of the Guarantee.</u> The Guarantee is entitled to the full faith and credit of the United States of America. The Guarantee constitutes a guarantee of payment and not of collection. In no event shall the liability of the DOT on the Guarantee exceed the Guaranteed Amount.

1.03 <u>Timely Demand.</u> In the event that the Bank fails to make demand on DOT within the time period required in Section 2.02(vi), the Guarantee of the unpaid installment of principal and/or interest as to which such timely demand was not made shall automatically terminate with respect thereto. This termination shall be without prejudice to the right of the Bank to make demand on DOT under this Agreement in respect of any other due and unpaid installment(s) of principal or interest.

1.04 <u>Prohibited Amendment or Transfers.</u> In the event that the Bank, without DOT's prior written consent, agrees to any material amendment, modification, or waiver or assigns, conveys, sells, or otherwise transfers any interest in or right or obligation under this Agreement or the Loan, or any Note, then DOT shall have the right to terminate the Guarantee by providing written notice to the Bank.

1.05 <u>No Acceleration.</u> In the event that, without the prior written consent of DOT, the Bank declares all or any part of the Borrower's indebtedness under the Loan to be immediately due and payable or to be due and payable upon the demand of the Bank, then DOT shall

have the right to terminate the Guarantee with respect to all or a portion of the Guaranteed Amount. The automatic acceleration of the Loan or any Note as a result of a bankruptcy or insolvency event does not constitute such an event. Any termination of the Guarantee by DOT shall be deemed affective as of the date of the declaration by the Bank.

## SECTION 2. CLAIM PROCEDURES

2.01  **Failure to Pay.** In the event that (i) the Borrower for any reason fails to pay in full any installment of principal (other than any proposed voluntary prepayment) or interest under the Loan or any Note for more than thirty (30) calendar days after the due date of such installment; and (ii) a period of fifteen (15) calendar days has elapsed since written demand for payment was made by the Bank on the Borrower (which demand may be omitted only if and to the extent that the making thereof would be prohibited by any applicable law), then the Bank may make demand on DOT under this agreement for payment (subject to Sections 1.03., 1.04, 1.05) of the Guaranteed Amount.

2.02  **Demand on DOT.** The Bank's demand on DOT must: (i) be in writing; (ii) be made only by the Bank; (iii) identify the installment(s) of principal and/or interest unpaid as of the date of such demand; (iv) include a copy of the Bank's written demand for payment on the Borrower (or in the event that such demand was omitted in accordance with law, evidence of the applicable law); (v) include an Assignment and Certification in the form of Annex A; (vi) be made not later than sixty (60) calendar days from the due date of the unpaid installment(s) of principal and /or interest on which the Bank's demand for payment is based.

2.03  **Assignment to DOT.** On and as of the date on which DOT pays the Guaranteed Amount, DOT shall become subrogated to, and the Bank shall be deemed to have assigned to DOT, without recourse and without need for any further action, the Guaranteed Percentage of the Bank's right, title, and interest in and to the principal of and interest on the Loan and each Note in respect thereof and to such extent, DOT shall have the right to enforce or participate in any claim (including without limitation, any claim in bankruptcy), right or remedy that the Bank then has or may thereafter acquire against the Borrower under the Loan or the Note. In addition to the Assignment and Certification required, the Bank shall, upon request by DOT, promptly execute and deliver such documents and take such other actions as DOT may reasonably request to evidence or give effect to such subrogation and assignment, it being understood and agreed that the execution and delivery of any such document or the taking of any such action shall not be a condition to DOT's obligation to pay the Guaranteed Amount.

2.04  **Conditions of Guarantee.** DOT hereby waives diligence, presentment, protest and any requirement that the Bank exhaust any right or take any action against or give notice to the Borrower or DOT, except for the written demands for payment by the Bank on the Borrower and DOT required under this Agreement.

2.05 Payment by DOT.

    (a) Within forty-five (45) Business Days after the date on which the Bank shall have properly documented its demand on DOT for payment pursuant to Section 2.02 (the "Demand Date"), the DOT shall, subject to Sections 1.03, 1.04 and 1.05, pay the Guaranteed Amount to the Bank in a single payment calculated as of the date of actual payment thereof by DOT.

    (b) Payment of the Guaranteed Amount due under this Agreement shall be made by DOT to the Bank, and such payment to the Bank shall discharge fully and completely DOT's liability under this Agreement. After the Demand Date, any funds received by the Bank or DOT from or on behalf of the Borrower in respect of any of the Borrower's obligations under the Loan Agreement or Note shall be applied in accordance with the terms of the Loan Agreement or Note.

    (c) If the Guarantee terminates pursuant to Sections 1.03, 1.04 or 1.05 with respect to one or more installments of principal and/or interest or with respect to Bank's interest therein, all installments of principal and/or interest, or any Bank's interest therein, as to which the Guarantee has terminated shall be deemed to have been paid in full when and as due for the purposes of determining the amount payable by DOT under this Section 2.05.

2.06 DOT Payment Does Not Discharge Borrower. Any statute or judicial decision to the contrary notwithstanding, no payment by DOT to the Bank under this Agreement shall be deemed to reduce, discharge, satisfy or terminate any obligation of Borrower under the Loan Agreement or any Note.

## SECTION 3. MISCELLANEOUS

3.01 Governing Law. THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE FEDERAL LAW OF THE UNITED STATES OF AMERICA IF AND TO THE EXTENT SUCH FEDERAL LAW IS APPLICABLE, AND OTHERWISE IN ACCORDANCE WITH THE LAW OF THE STATE OF Illinois.

3.02 Benefit of Agreement. This Agreement shall be binding upon and inure to the benefit of and be enforceable by the respective successors and permitted assigns of the parties hereto.

3.03 Entire Agreement. This Agreement contains the entire agreement among the parties hereto regarding the subject matter hereof. In the event that any term of the Loan Agreement or any Note conflicts with any term of this Agreement, the terms and provisions of this Agreement shall control to the extent of such conflict.

3.04 Amendment or Waiver. This Agreement may not be changed, discharged or terminated (except as expressly provided herein) without the written consent of the parties hereto, and no provision hereof may be waived without the written consent of the party to be bound thereby.

3.05 Counterparts. This Agreement may be signed in separate counterparts, each of which

shall be deemed to be an original and all of which together shall constitute one and the same instrument.

3.06 Severability. To the extent permitted by applicable law, the illegality or unenforceability of any provision of this Agreement shall not in any way affect or impair the legality or enforceability of the remaining provisions of this Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed, in duplicate, this _29th_ day of _JUNE_, 2004.

International Bank of Chicago
Robert A. Klamp, Chief Executive Officer
President

United States Department of Transportation
Sean M. Moss, Director, Office of Small and
Disadvantaged Business Utilization

ANNEX A

FORM OF ASSIGNMENT
ASSIGNMENT AND CERTIFICATION

This Assignment and Certification is made pursuant to the terms of the Guarantee Agreement dated as of June 29, 2004 (the "Agreement") between the United States Department of Transportation (DOT) and International Bank of Chicago, Chicago, Illinois, a State Banking Corporation (Bank). Capitalized terms used herein and not otherwise defined herein shall have the meanings assigned in the Agreement.

1. Assignment. For value received, the Bank hereby assigns to DOT, without recourse, all of its right, title and interest in and to the principal of and interest on the Loan and under the Loan Agreement and each Note in respect thereof, to the extent, and only to the extent, of the Bank's Guaranteed Percentage of the Loan represented by the Guaranteed Amount paid by DOT to the Bank.

2. Certifications. The Bank hereby certifies that (a) the Guaranteed Amount demanded to be paid by DOT to the Bank is properly calculated and due and owing to the Bank under the terms of the Agreement and (b) it has not, without the prior written consent of DOT:

(i) agreed to any material amendment, written modification or written waiver in violation of Section 1.04 of the Agreement; or

(ii) assigned, conveyed, sold or otherwise transferred any interest in or right or obligation under this Agreement, or any Note in violation of Section 1.04 the Agreement; or

(iii)   accelerated or caused the Agent to accelerate all or any part of the Loan or any Note in violation of Section 1.05 of the Agreement;

3. _Acknowledgement_. The Bank acknowledges and agrees that this Assignment and Certification is subject to the terms of the Agreement, including, without limitation, the following:

(a)   Any funds received by the Bank or DOT from or on behalf of the Borrower in respect of any of the Borrower's obligations under the Loan Agreement or Note shall be applied in accordance with the terms of the Loan Agreement or Note.

(b)   The Bank shall, upon request by DOT, execute and deliver such documents and take such other actions as DOT may reasonably request to establish, preserve or enforce the rights, title and interest of DOT in, to and under the Loan Agreement and each Note, and any right or remedy that DOT has or may acquire against the Borrower thereunder, it being understood and agreed that the execution and delivery of any such document or the taking of any such action shall not be a condition to DOT's obligation to pay the Guaranteed Amount.

IN WITNESS WHEREOF, the Bank has caused this instrument to be duly executed and delivered this 24th day of June, 2004.

By: _____
(Signature)

(SEAL) Name: Robert A. Klamp
(Print)

Attest Frank Calabrese Title: Loan Officer
Secretary

International Bank of Chicago

**EXHIBIT B**

DEPARTMENT OF TRANSPORTATION
OFFICE OF SMALL AND DISADVANTAGE BUSINESS UTILIZATION
SHORT TERM LENDING PROGRAM

GUARANTEE AGREEMENT

This GUARANTEE AGREEMENT dated as of _December 24_ ,2004 (this Agreement) is made by the United States Department of Transportation (DOT) and International Bank of Chicago of Chicago, Illinois, a State Banking Corporation, its successors and permitted assigns (Bank) concerning the Bank's extension of a Twenty Five Thousand Dollars ($25,000) Loan (Loan) to Consolidated Industries, Inc., A Detroit Corporation, (Borrower) .

## SECTION 1. GUARANTEE

1.01 <u>The Guarantee</u>. Subject to the terms and conditions set forth in this Agreement, DOT hereby guarantees, irrevocably and unconditionally (except to the extent expressly provided in Sections 1.03, 1.04, 1.05 or by applicable law) to the Bank payment of seventy five percent (75%) of the outstanding and unpaid principal amount of the loan, interest on the principal amount of the loan and interest on any due and unpaid amounts owing by the Borrower to the Bank, provided however that the maximum liability of DOT shall not at any time exceed Eighteen Thousand Seven Hundred and Fifty, plus interest ($18,750), the Guaranteed Amount.

1.02 <u>Coverage of the Guarantee</u>. The Guarantee is entitled to the full faith and credit of the United States of America. The Guarantee constitutes a guarantee of payment and not of collection. In no event shall the liability of the DOT on the Guarantee exceed the Guaranteed Amount.

1.03 <u>Timely Demand</u>. In the event that the Bank fails to make demand on DOT within the time period required in Section 2.02(vi), the Guarantee of the unpaid installment of principal and/or interest as to which such timely demand was not made shall automatically terminate with respect thereto. This termination shall be without prejudice to the right of the Bank to make demand on DOT under this Agreement in respect of any other due and unpaid installment(s) of principal or interest.

1.04 <u>Prohibited Amendment or Transfers</u>. In the event that the Bank, without DOT's prior written consent, agrees to any material amendment, modification, or waiver or assigns, conveys, sells, or otherwise transfers any interest in or right or obligation under this Agreement or the Loan, or any Note, then DOT shall have the right to terminate the Guarantee by providing written notice to the Bank.

1.05 <u>No Acceleration</u>. In the event that, without the prior written consent of DOT, the Bank declares all or any part of the Borrower's indebtedness under the Loan to be immediately due and payable or to be due and payable upon the demand of the Bank, then DOT shall

FROM :                              FAX NO. :7737692686            Dec. 29 2004 11:25AM P3

have the right to terminate the Guarantee with respect to all or a portion of the Guaranteed Amount. The automatic acceleration of the Loan or any Note as a result of a bankruptcy or insolvency event does not constitute such an event. Any termination of the Guarantee by DOT shall be deemed effective as of the date of the declaration by the Bank.

## SECTION 2. CLAIM PROCEDURES

2.01  <u>Failure to Pay</u>. In the event that (i) the Borrower for any reason fails to pay in full any installment of principal (other than any proposed voluntary prepayment) or interest under the Loan or any Note for more than thirty (30) calendar days after the due date of such installment; and (ii) a period of fifteen (15) calendar days has elapsed since written demand for payment was made by the Bank on the Borrower (which demand may be omitted only if and to the extent that the making thereof would be prohibited by any applicable law), then the Bank may make demand on DOT under this agreement for payment (subject to Sections 1.03.,1.04, 1.05) of the Guaranteed Amount.

2.02  <u>Demand on DOT</u>. The Bank's demand on DOT must: (i) be in writing; (ii) be made only by the Bank; (iii) identify the installment(s) of principal and/or interest unpaid as of the date of such demand; (iv) include a copy of the Bank's written demand for payment on the Borrower (or in the event that such demand was omitted in accordance with law, evidence of the applicable law); (v) include an Assignment and Certification in the form of Annex A; (vi) be made not later than sixty (60) calendar days from the due date of the unpaid installment(s) of principal and /or interest on which the Bank's demand for payment is based.

2.03  <u>Assignment to DOT</u>. On and as of the date on which DOT pays the Guaranteed Amount, DOT shall become subrogated to, and the Bank shall be deemed to have assigned to DOT, without recourse and without need for any further action, the Guaranteed Percentage of the Bank's right, title, and interest in and to the principal of and interest on the Loan and each Note in respect thereof and to such extent, DOT shall have the right to enforce or participate in any claim (including without limitation, any claim in bankruptcy), right or remedy that the Bank then has or may thereafter acquire against the Borrower under the Loan or the Note. In addition to the Assignment and Certification required, the Bank shall, upon request by DOT, promptly execute and deliver such documents and take such other actions as DOT may reasonably request to evidence or give effect to such subrogation and assignment, it being understood and agreed that the execution and delivery of any such document or the taking of any such action shall not be a condition to DOT's obligation to pay the Guaranteed Amount.

2.04  <u>Conditions of Guarantee</u>. DOT hereby waives diligence, presentment, protest and any requirement that the Bank exhaust any right or take any action against or give notice to the Borrower or DOT, except for the written demands for payment by the Bank on the Borrower and DOT required under this Agreement.

·FROM :                         FAX NO. :7737692686            Dec. 29 2004 11:26AM  P4

2.05 <u>Payment by DOT.</u>

    (a) Within forty-five (45) Business Days after the date on which the Bank shall have properly documented its demand on DOT for payment pursuant to Section 2.02 (the "<u>Demand Date</u>"), the DOT shall, subject to Sections 1.03, 1.04 and 1.05, pay the Guaranteed Amount to the Bank in a single payment calculated as of the date of actual payment thereof by DOT.

    (b) Payment of the Guaranteed Amount due under this Agreement shall be made by DOT to the Bank, and such payment to the Bank shall discharge fully and completely DOT's liability under this Agreement. After the Demand Date, any funds received by the Bank or DOT from or on behalf of the Borrower in respect of any of the Borrower's obligations under the Loan Agreement or Note shall be applied in accordance with the terms of the Loan Agreement or Note.

    (c) If the Guarantee terminates pursuant to Sections 1.03, 1.04 or 1.05 with respect to one or more installments of principal and/or interest or with respect to Bank's interest therein, all installments of principal and/or interest, or any Bank's interest therein, as to which the Guarantee has terminated shall be deemed to have been paid in full when and as due for the purposes of determining the amount payable by DOT under this Section 2.05.

2.06 <u>DOT Payment Does Not Discharge Borrower.</u> Any statute or judicial decision to the contrary notwithstanding, no payment by DOT to the Bank under this Agreement shall be deemed to reduce, discharge, satisfy or terminate any obligation of Borrower under the Loan Agreement or any Note.

## SECTION 3. MISCELLANEOUS

3.01 <u>Governing Law.</u> THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE FEDERAL LAW OF THE UNITED STATES OF AMERICA IF AND TO THE EXTENT SUCH FEDERAL LAW IS APPLICABLE, AND OTHERWISE IN ACCORDANCE WITH THE LAW OF THE STATE OF MICHIGAN.

3.02 <u>Benefit of Agreement.</u> This Agreement shall be binding upon and inure to the benefit of and be enforceable by the respective successors and permitted assigns of the parties hereto.

3.03 <u>Entire Agreement.</u> This Agreement contains the entire agreement among the parties hereto regarding the subject matter hereof. In the event that any term of the Loan Agreement or any Note conflicts with any term of this Agreement, the terms and provisions of this Agreement shall control to the extent of such conflict.

3.04 <u>Amendment or Waiver.</u> This Agreement may not be changed, discharged or terminated (except as expressly provided herein) without the written consent of the parties hereto, and no provision hereof may be waived without the written consent of the party to be bound thereby.

3.05 <u>Counterparts.</u> This Agreement may be signed in separate counterparts, each of which

shall be deemed to be an original and all of which together shall constitute one and the same instrument.

3.06 Severability: To the extent permitted by applicable law, the illegality or unenforceability of any provision of this Agreement shall not in any way affect or impair the legality or enforceability of the remaining provisions of this Agreement.

3.07 Extension. An extension of a period up to ninety days is allowable from the year term ending date below provided that the extension is in writing and agreed upon by both parties.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed, in duplicate, this ____ day of ____: 2004.

International Bank of Chicago
Robert A. Klamp, Chief Executive Officer
President

United States Department of Transportation
Sean M Moss, Director, Office of Small and
Disadvantaged Business Utilization

ANNEX A

FORM OF ASSIGNMENT
ASSIGNMENT AND CERTIFICATION

This Assignment and Certification is made pursuant to the terms of the Guarantee Agreement dated, as of _____, 2004 (the "Agreement") between the United States Department of Transportation (DOT) and International Bank of Chicago, Chicago, Illinois, a State Banking Corporation (Bank). Capitalized terms used herein and not otherwise defined herein shall have the meanings assigned in the Agreement.

1. Assignment. For value received, the Bank hereby assigns to DOT, without recourse, all of its right, title and interest in and to the principal of and interest on the Loan and under the Loan Agreement and each Note in respect thereof, to the extent, and only to the extent, of the Bank's Guaranteed Percentage of the Loan represented by the Guaranteed Amount paid by DOT to the Bank.

2. Certifications. The Bank hereby certifies that (a) the Guaranteed Amount demanded to be paid by DOT to the Bank is properly calculated and due and owing to the Bank under the terms of the Agreement and (b) it has not, without the prior written consent of DOT:

(i) agreed to any material amendment, written modification or written waiver in violation of Section 1.04 of the Agreement; or

FROM :                           FAX NO.  :7737692686              Dec. 29 2004 11:27AM  P6

(ii)    assigned, conveyed, sold or otherwise transferred any interest in or right or obligation under this Agreement, or any Note in violation of Section 1.04 the Agreement; or

(iii)    accelerated or caused the Agent to accelerate all or any part of the Loan or any Note in violation of Section 1.05 of the Agreement;

3. Acknowledgement. The Bank acknowledges and agrees that this Assignment and Certification is subject to the terms of the Agreement, including, without limitation, the following:

(a)    Any funds received by the Bank or DOT from or on behalf of the Borrower in respect of any of the Borrower's obligations under the Loan Agreement or Note shall be applied in accordance with the terms of the Loan Agreement or Note.

(b)    The Bank shall, upon request by DOT, execute and deliver such documents and take such other actions as DOT may reasonably request to establish, preserve or enforce the rights, title and interest of DOT in, to and under the Loan Agreement and each Note, and any right or remedy that DOT has or may acquire against the Borrower thereunder, it being understood and agreed that the execution and delivery of any such document or the taking of any such action shall not be a condition to DOT's obligation to pay the Guaranteed Amount.

IN WITNESS WHEREOF, the Bank has caused this instrument to be duly executed and delivered this _____ day of _____, 2004.


By:_____
(Signature)


(SEAL) Name:_____
(Print)


Attest_____ Title: _____
Secretary


_____
International Bank of Chicago